**UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS**

**LAURA BONDY,**

      Plaintiff,

v.

**GLASS, LEWIS & CO., LLC,**
<u>Serve Registered Agent:</u>
CSC – Lawyers Inc. Serv. Co.
221 Bolivar St.
Jefferson City, MO 65101

      Defendant.

Case No.

Division

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW, Plaintiff Laura Bondy, by and through the undersigned counsel, and for her Complaint against Defendant Glass, Lewis & Co., states and avers to the Court as follows:

## TYPE OF ACTION

1.  This is an action for compensatory and punitive damages arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et seq.</u> ("Title VII").

## PARTIES

2.  Plaintiff resides in Basehor, Leavenworth County, Kansas.

3.  At all times mentioned herein, Defendant Glass, Lewis & Co. LLC is a Delaware limited liability company, registered to do business in the States of Missouri and Kansas, employed at least fifteen (15) employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and was an "employer" within the meaning of Title VII.

4.  At all times mentioned herein, the perpetrators described in this Complaint were agents, servants, and employees of Defendant and were at all such times acting within the scope

and course of their agency and employment or were acting as a "proxy" or "alter-ego," and/or the actions were expressly authorized by Defendant and/or their actions were ratified by Defendant, thus making Defendant liable for said actions under the doctrine of respondeat superior.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of these employment discrimination claims, and venue properly lies in this judicial district pursuant to 28 U.S.C. § 1331, 28 U.S.C. 1391, and 42 U.S.C. § 2000e-5(f)(3).

6.      Venue is also proper in this Court because many of the unlawful discriminatory acts perpetrated by Defendant against Plaintiff occurred while Plaintiff was working remotely from her home in Basehor, KS.

7.      Plaintiff seeks damages in an amount in excess of seventy-five thousand dollars ($75,000.00).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      On or about November 15, 2022, Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the acts complained of herein alleging that Defendant subjected her to discrimination, harassment, and retaliation. A copy is attached hereto and incorporated herein as Exhibit A.

9.      On October 10, 2023, Plaintiff received a Notice of Right to Sue from the EEOC. A copy is attached hereto and incorporated herein as Exhibit B.

10.      Plaintiff filed this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

11.      Plaintiff has properly exhausted all administrative remedies.

**ALLEGATIONS COMMON TO ALL COUNTS**

12.     Plaintiff is female.

13.     Plaintiff has approximately 10 years of experience working in different management positions.

14.     In or about December 2018, Matt Seufert, a male, began his employment at Defendant Glass, Lewis & Co. LLC ("Glass Lewis") at its office at 2323 Grand Boulevard, Suite 1125, Kansas City, MO (the "Office") in a Manager, Client Services position.

15.     In or about May 2019, Plaintiff graduated Magna Cum Laude from MidAmerica Nazarene University with a Bachelor of Arts Degree in Applied Organizational Leadership.

16.     In or about July 2019, Plaintiff began her employment with Defendant Glass Lewis at its office at 2323 Grand Boulevard, Suite 1125, Kansas City, MO 64108.

17.     Plaintiff started working at Glass Lewis in a Client Service Associate position.

18.     That same day, Charlie Maybrier, a male, started working at Glass Lewis in a Client Services Associate position.

19.     Immediately preceding Mr. Maybrier starting in the Client Service Associate position, he had been employed in a temporary position at Glass Lewis in a different department.

20.     Brendon McCarthy, who was in a Manager, Client Services position, was the onboarding manager and performed the onboarding process for Mr. Maybrier and Plaintiff.

21.     Mr. Seufert led one team of employees and Mr. McCarthy led another team of employees; however, the team operated together as a whole.

22.     During and following the Covid-19 pandemic, Plaintiff primarily worked remotely from her home in Basehor, KS.

23. When Plaintiff returned to work in the office, she only worked in the office one day per week.

24. The rest of Plaintiff's work week, she worked remotely from her home in Basehor, KS.

25. Female employees reported Mr. McCarthy, a male manager, for subjecting them to discriminatory conduct based on sex.

26. On one occasion, Mr. McCarthy initiated an inappropriate conversation about breastfeeding with a female employee under his supervision.

27. On another occasion, Mr. McCarthy told a female employee under his supervision that another female employee under his supervision was not going to be promoted but did not say why.

28. On another occasion, Mr. McCarthy expressed harsh criticism to a female employee under his supervision about her lack of education and made jokes about it in front of co-workers.

29. On another occasion, Mr. McCarthy had a conversation with a co-worker about the attractiveness of his wife and how a co-worker wanted to have sexual relations with her.

30. Upon information and belief, Mr. McCarthy had been intoxicated while on the job on one or more occasions.

31. Plaintiff did not feel comfortable being alone around Mr. McCarthy.

32. At some point, Mr. McCarthy was removed from assisting with client accounts held by female employee(s) due to his discriminatory and/or inappropriate comment(s) and/or conduct based on sex.

33. In or about late 2021, Plaintiff was promoted to a Senior Client Service Manager position.

34.     Around the same time, Mr. Maybrier was promoted to a Senior Client Services Manager position.

35.     Plaintiff participated in and completed continuing education courses regarding management skills that were offered by Glass Lewis.

36.     In or about December 2021, Marguerite Pierce, the Director, Client Services, was promoted to Senior Director, Client Services.

37.     Plaintiff's overall performance at Glass Lewis for 2021 was rated as above expectations.

38.     In or about January 2022, Mr. Seufert was promoted to the Director, Client Services position.

39.     In or about early 2022, it became apparent that the workload of Plaintiff and female co-workers in similar positions was significantly larger than the workload of Mr. Maybrier and male co-workers in similar positions.

40.     In or about July 2022, Mr. Maybrier was promoted again, this time to a Supervisor, Client Services position.

41.     Mr. Seufert set up a virtual meeting with Plaintiff.

42.     During the meeting, Plaintiff was working remotely from her home in Basehor, KS.

43.     During the meeting, Mr. Seufert told Plaintiff that he did not want her to be upset.

44.     During the meeting, Mr. Seufert told Plaintiff that she was considered for the Supervisor, Client Services position.

45.     Prior to Mr. Maybrier's promotion, Plaintiff was not encouraged to apply for the Supervisor, Client Services job opening or otherwise made aware that the job was available.

46.     To Plaintiff's knowledge, prior to Mr. Maybrier's promotion, the Supervisor, Client Services job opening was not posted.

47.     To Plaintiff's knowledge, the Supervisor, Client Services position that Mr. Maybrier was promoted to was a new job that had been created.

48.     Upon information and belief, Mr. Maybrier was given the promotion to Supervisor, Client Services without being interviewed.

49.     During the meeting with Mr. Seufert, he told Plaintiff that he was glad she was interested in the Supervisor, Client Services position but indicated that she needed to do more work for the same pay.

50.     On or about September 1, 2022, Plaintiff participated in another virtual meeting with Mr. Seufert.

51.      During the meeting, Plaintiff was working remotely from her home in Basehor, KS.

52.     During the meeting, Plaintiff notified Mr. Seufert that she had received an offer for a job at a different employer with higher compensation than that at her current position at Glass Lewis.

53.     During the meeting, Plaintiff told Mr. Seufert that she expected to be promoted if she was to continue employment at Glass Lewis.

54.     During the meeting, Mr. Seufert told Plaintiff that they were willing to match the compensation from the job offer that she had received from a different prospective employer.

55.     In or about September 2022, Mr. Seufert informed Plaintiff that they were forming a training committee and asked her if she wanted to be a part of the committee.

56.     Mr. Seufert told Plaintiff that she was great at creating policies and procedures, documenting her work, and training new team members.

57.     Plaintiff indicated that she was interested in joining the training committee.

58.     Mr. Seufert told Plaintiff he was glad she was interested in joining the training committee because it was "voluntold" – she was expected to join but with no additional pay.

59.     In or about late September 2022, Glass Lewis had neither increased Plaintiff's pay to match the compensation of the job offer from her other prospective employer or promoted her.

60.     Mr. Seufert told Plaintiff that her promotion was in the budget for the following year.

61.     Plaintiff received less compensation than male co-workers in the same or similar position(s) with similar or less education and/or work experience.

62.     Defendant's adverse actions and/or comments and/or conduct based on sex resulted in working conditions that were so intolerable that a reasonable employee would feel forced to resign.

63.     Defendant intended to force Plaintiff to resign or reasonably foresaw or should have foreseen that its comments and/or conduct based on sex would force Plaintiff to resign.

64.     On or about September 29, 2022, Plaintiff resigned from her employment at Defendant due to working conditions which she perceived to be intolerable, thereby resulting in her constructive discharge.

65.     During her exit interview, Plaintiff indicated to Glass Lewis that it could have done the following to prevent her from leaving: (1) provided higher pay and pay transparency, (2) provided opportunities for advancement, (3) provided a chance to cross-train and develop skills,

and (4) addressed the unsustainable workload she was given (she was managing several clients who were previously managed by multiple co-workers in addition to several other large clients.

66.    Prior to her resignation from employment at Glass Lewis, Plaintiff's overall performance rating was always meets expectations or better.

67.    Another female co-worker(s) resigned from employment at Glass Lewis around the same time as Plaintiff.

68.    Upon information and belief, after Plaintiff resigned and another female co-worker resigned, about seven of their clients were reassigned or taken by a male co-worker.

69.    Defendant's acts of discrimination and harassment against Plaintiff comprise a series of interrelated events which constitute a continuing violation.

### COUNT I
### Title VII – Discrimination & Hostile Work Environment

70.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

71.    Plaintiff is a member of a legally protected class due to her sex.

72.    Plaintiff was subjected to the above referenced adverse actions and/or omissions because of her sex.

73.    The above-referenced discrimination affected the terms, conditions, and/or privileges of Plaintiff's employment.

74.    The above-referenced discrimination and harassment toward Plaintiff was because of Plaintiff's sex.

75.    Defendants knew of the above-referenced discrimination and harassment toward Plaintiff and failed to exercise reasonable care to prevent and promptly correct said conduct.

76.    Defendants failed to make a good-faith effort to establish and enforce policies to prevent illegal discrimination and harassment.

77.     Defendant failed to properly train and/or otherwise inform supervisors and employees concerning their duties and obligations under Title VII.

78.     As a direct and proximate result of Defendant's unlawful conduct described above, Plaintiff has suffered damages, including, but not limited to, pain and suffering, loss of past and future wages and benefits, loss of enjoyment of life, and other non-pecuniary losses.

79.     As a direct and proximate result of Defendant's unlawful conduct described above, Plaintiff has suffered garden variety emotional distress damages, including, but not limited to, embarrassment, degradation, humiliation, and various other forms of garden variety emotional distress.

80.     Defendant's conduct was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of others, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff prays that this honorable Court enter judgment in her favor and against Defendant for such damages as are fair and reasonable, including compensatory damages, punitive damages, pre- and post-judgment interest, attorney's fees and costs, all in an amount over $25,000.00 and for injunctive relief, and for such additional relief as may be just and proper under the circumstances.

## JURY TRIAL DEMAND

PLAINTIFF REQUESTS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.

**Murphy, Kinney, & Sumy, LLC**

 /s/ *Kyle E. Murphy*
Kyle E. Murphy #78836
406 W. 34th St., Suite 816
Kansas City, Missouri 64111
Phone: (816) 281-5470
Facsimile: (816) 866-7772
kyle@murphykinney.com
gunner@murphykinney.com
ATTORNEY FOR PLAINTIFF