## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LAURA BONDY,** | |
| Plaintiff, | |
| vs. | Case No.: 2:24-CV-02001-HLT-TJJ |
| **GLASS, LEWIS & CO., LLC,** | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION

Plaintiff Laura Bondy filed the present action against Glass Lewis alleging a single claim of sex discrimination. At the outset of her employment, however, Bondy agreed that any dispute arising out of her employment relationship, including claims of sex discrimination, must be resolved through binding arbitration. Because Bondy has agreed to resolve her disputes with Glass Lewis through arbitration, Glass Lewis respectfully moves this court, pursuant to 9 U.S.C. §§ 2–4 and Fed. R. Civ. P. 12(b)(1) and (6), to dismiss Bondy's Complaint. In the alternative, Glass Lewis requests that this matter be stayed pending arbitration.

## STATEMENT OF FACTS

1. On June 13, 2019, Glass Lewis sent an e-mail to Laura Bondy offering her employment with Glass Lewis. The e-mail attached a signed offer letter from Vice President of Human Resources Mary Beth Macedo, as well as a Mutual Agreement to Arbitrate. (Exhibit 1, Declaration of Mary Beth Macedo ("Macedo Decl."), ¶4). The e-mail, offer letter, and Mutual Agreement to Arbitrate are attached as Exhibit A to the Macedo Declaration.

2. Among other provisions, the offer letter stated "This letter sets forth the terms and conditions of your employment with the Company. To be certain that you understand and agree with the terms of this employment offer, please review this letter, which you will need to sign and return prior to your start date as a condition of employment." (Exhibit A to Macedo Decl.).

3. On page two, the offer letter stated "**Arbitration**: This offer of employment is also conditioned upon your agreement to enter, with the Company, the Mutual Agreement to Arbitrate provided with this letter." (Exhibit A to Macedo Decl.).

4. Also on page two, the offer letter stated, "**Entire Agreement/Modification**: This letter agreement, including the . . . Mutual Agreement to Arbitrate, is the sole and entire agreement between you and the Company with respect to the subject matter of your employment and supersedes all prior or contemporaneous agreements or negotiations on that subject." (Exhibit A to Macedo Decl.).

5. On page three, the offer letter included Macedo's signature on behalf of Glass Lewis. (Exhibit A to Macedo Decl.).

6. On June 14, 2019, Bondy sent an e-mail to Glass Lewis returning the offer letter and the Mutual Agreement to Arbitrate, with her signature on both documents. (Macedo Decl. ¶ 6). Bondy's e-mail began "I am excited to accept this job offer and am looking forward to working

with you and the team at Glass Lewis. ***Attached are the signed offer letter and arbitration agreement***." (emphasis added). The return e-mail, signed offer letter, and signed Mutual Agreement to Arbitrate are attached as Exhibit B to the Macedo Declaration.

7.      Pursuant to the Arbitration Agreement, Bondy and Glass Lewis agreed: "[i]n the event of any dispute or claim relating to or arising out of your employment relationship with the Company…, your employment or termination of your employment with the Company for any reason (including, but not limited to, any claims of breach of contract, defamation, unpaid wages, wrongful termination or age, sex, sexual orientation, race, color, national origin, ancestry, marital status, religious creed, physical or mental disability or medical condition or other discrimination, retaliation, or harassment), ***you and the Company agree*** that all such disputes shall be fully resolved by confidential, binding arbitration…" (Arbitration Agreement ¶ 1) (emphasis in original).

8.      The Arbitration Agreement provides "You and the Company expressly agree that this agreement involves interstate commerce and the interpretation and enforcement of this agreement to arbitrate shall be governed by the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq.". *Id.* at ¶ 7.

9.      The Arbitration Agreement also provides "You and the Company agree that disputes relating to the formation, applicability, interpretation and enforcement of this arbitration provision shall be determined exclusively by the arbitrator." *Id*. at ¶ 8.

10.     On January 4, 2024, in contravention of the Arbitration Agreement, Bondy filed this lawsuit against Glass Lewis alleging sex discrimination.

**ARGUMENT**

The Arbitration Agreement executed by Bondy is a valid, enforceable agreement that covers the subject matter of Bondy's claim of sex discrimination. The Federal Arbitration Act (FAA) applies to the Arbitration Agreement and provides it is enforceable. Accordingly, this Court should dismiss this case or, in the alternative, stay the case and compel arbitration.

**I.    THE FAA GOVERNS THE PARTIES' ARBITRATION AGREEMENT.**

The FAA governs any written arbitration agreement and deems it valid, except where ordinary contract principles invalidate the agreement. The FAA provides that any "written provision in…a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The term "involving commerce" is interpreted broadly, such that the FAA governs any arbitration agreement that affects commerce in any way. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270–277 (1995); *see also Perry v. Thomas*, 482 U.S. 483, 490 (1987) (the FAA "embodies Congress's intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause").

Here, the agreement to arbitrate is governed by the FAA because Bondy was employed by a company engaged in commerce. In addition, the parties agreed that the FAA would govern their agreement. (SOF 8). Accordingly, the FAA governs the parties' agreement to arbitrate.

**II.    THE FAA MANDATES THE PARTIES AGREEMENT BE ENFORCED ACCORDING TO ITS TERMS.**

The FAA requires courts to enforce arbitration agreements according to their terms. *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). The purpose of the FAA is to ensure private arbitration agreements are enforced. *AT&T Mobility LLC v. Concepcion*, 563

U.S. 333, 344 (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Standofrd Junior Univ.*, 489 U.S. 468, 474 (1989)). The FAA is a congressional declaration of a liberal federal policy favoring arbitration agreements. *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 771 (10th Cir. 2010).

In considering the enforceability of an arbitration agreement, the Court need only determine 1) whether a valid agreement to arbitrate exists, and 2) whether the subject matter of the dispute is covered by the arbitration agreement. *Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1057 (10th Cir. 2018). Once these criteria are satisfied, all doubts must be resolved in favor of arbitration, and the party resisting arbitration—here, Plaintiff—bears the burden of proving that the agreement is invalid. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

### A.    A Valid Agreement to Arbitrate Exists.

An agreement to arbitrate is valid when it reflects the essential contract elements of offer, acceptance, and consideration. *M West, Inc. v. Oak Park Mall*, 44 Kan. App. 2d 35, 49, 234 P.3d 833, 844 (Kan. App. 2010); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (stating, in the context of the FAA, that in deciding whether the agreement to arbitrate is valid, courts "should apply ordinary state-law principles that govern the formation of contracts.").[1] All three elements exist here.

### 1.    Offer and Acceptance

An offer is "a manifestation of willingness to enter into a bargain." *Prince Enters., Inc. v. Griffith Oil Co., Inc.*, 8 Kan. App. 2d 644, 649, 664 P.2d 877, 882 (Kan. App. 1983). Acceptance "may be manifested by the performance of an act, such as the exercise of dominion over a thing,

---

[1] As noted in the Complaint, Bondy began her employment with Glass Lewis in Kansas City, Missouri. (Complaint, ¶ 16). To the extent Bondy claims the Court should consider Missouri contract law, the elements of a binding contract are the same. *See Holm v. Menard, Inc.*, 618 S.W.3d 669, 674 (Mo. App. 2021).

as well as by an affirmative answer." *Id.* at 650; *see also Lindsey Masonry Co. v. Murray & Sons Constr. Co.*, 53 Kan. App. 2d 505, 530–31, 390 P.3d 56, 72–73 (Kan. App. 2017).

Here, Glass Lewis <u>offered</u> the Arbitration Agreement in conjunction with the signed offer letter from Vice President of Human Resources Mary Beth Macedo on behalf of Glass Lewis. (SOF 1-5). Bondy <u>accepted</u> by signing and returning both the offer letter and the Arbitration Agreement. (SOF 6).

Macedo forgot to sign the Arbitration Agreement after Bondy signed and returned it (Macedo Decl. ¶ 7), but that is of no consequence. Glass Lewis' offer of mutually binding arbitration was plainly communicated. The Arbitration Agreement was titled "Mutual Agreement to Arbitrate" and states in bold italicized text "***you and the Company agree***" that all disputes must be resolved by binding arbitration, which suffices to demonstrate mutuality of obligation. *See Bolden v. AT&T Servs., Inc.,* 350 F. Supp. 3d 1029, 1033 (D. Kan. 2018) (company's signature on arbitration agreement was not required because the language of the agreement unequivocally required the employer to submit covered disputes to arbitration and the company was bound by the terms of the agreement).

Moreover, the Arbitration Agreement was attached to the signed offer letter from Macedo on behalf of Glass Lewis, and confirms Glass Lewis' intent to be bound by the Arbitration Agreement. *See Franks v. Guckenheimer Enters., Inc.*, No. 4:19-CV-1845-RWS, 2019 WL 5864118, at *1 (E.D. Mo. Nov. 8, 2019) (enforcing arbitration agreement that was not signed by employer where the employer signed the offer letter that enclosed the agreement). Thus, offer and acceptance are clearly established.

### 2.    Consideration

"Under Kansas law, there is a rebuttable presumption that contracts are supported by consideration." *Uarco, Inc. v. Eastland*, 584 F. Supp. 1259, 1262 (D. Kan. 1984) (citing *Ferraro v. Fink*, 191 Kan. 53, 379 P.2d 266 (Kan. 1963)). Consideration for an arbitration agreement is the parties' mutual agreement to waive their right to trial by before a judge or jury and submit all disputes to arbitration. "The parties' mutual promises to arbitrate constitute sufficient consideration under Kansas law." *Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1226, n. 1 (D. Kan. 2007). The Arbitration Agreement here contains a mutual promise to arbitrate disputes. It explicitly provides that "***you and the Company agree***" to submit all disputes to binding arbitration, (Arbitration Agreement, ¶ 1); and that "**you and the Company are both** waiving the right to a trial before a judge or jury with respect to any such disputes." (Arbitration Agreement ¶ 6) (emphasis added).

Moreover, Glass Lewis' contemporaneous offer of employment to Bondy also suffices as consideration for the Arbitration Agreement. *See, e.g.*, *Rangel v. Hallmark Cards, Inc.*, 2010 WL 781722, at *6–7 (D. Kan. Mar. 4, 2010) (citing cases supporting proposition that offer of employment is sufficient consideration); *White v. Four B Corp.*, 2011 WL 4688843, *2 (D. Kan. Oct. 5, 2011) ("Defendant, in consideration for plaintiff's agreement to arbitrate, hired plaintiff.").

Because there existed offer, acceptance, and consideration, the Arbitration Agreement is valid and enforceable.

### B.    Plaintiff's Claims Are Within the Scope of the Arbitration Agreement.

The Arbitration Agreement requires arbitration of "any dispute or claim relating to or arising out of your employment relationship with the Company…, [and] your employment or the termination of your employment with the Company for any reason (including, but not limited to,

any claims of . . . *sex* . . . discrimination, retaliation or harassment." (Arbitration Agreement ¶ 1) (emphasis added). Thus, the Arbitration Agreement clearly encompasses Bondy's sex discrimination claim.

Because Bondy has agreed to submit to arbitration any claims arising from her employment relationship with Glass Lewis, including claims of sex discrimination, the Court should dismiss this case. In the alternative, the Court should stay the case and compel arbitration.

### C.    Any Issues Regarding Arbitration Should be Decided by the Arbitrator.

As discussed above, a valid and enforceable agreement to arbitrate exists, and Bondy's claims are clearly covered by the Arbitration Agreement. Beyond that, any challenges Bondy may have to the Arbitration Agreement are for the arbitrator to decide. The Arbitration Agreement provides that "disputes relating to the formation, applicability, interpretation and enforcement of this arbitration provision shall be determined exclusively by the arbitrator." (SOF 9).

Although normally a court is charged with determining "gateway" issues of whether a valid arbitration agreement exists, there is an exception to this general rule where the "the parties clearly and unmistakably provide otherwise." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648–49 (1986). In such cases, a court's only role is to examine the arbitration agreement to determine whether the parties have in fact agreed to commit gateway issues to the arbitrator. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

Here, the Arbitration Agreement contains a mutual agreement to delegate gateway issues to the arbitrator. That mutual agreement to delegate is the consideration for the delegation clause. *See Cassity-Hauck v. Hauck*, 437 P.3d 1033 at *6 (Kan. App. Apr. 5 2019) ("The mutual promises of the contracting parties provide sufficient consideration for the agreement"). As such, the Court should dismiss this case. In the alternative, the Court should stay the case and compel arbitration.

**III.   THIS ACTION SHOULD BE DISMISSED OR, IN THE ALTERNATIVE, STAYED PENDING ARBITRATION.**

Section 3 of the FAA requires that courts stay proceedings on claims "referable to arbitration." 9 U.S.C. § 3. Some courts (including at least one Kansas court) have held that, where all claims between the parties are subject to arbitration, dismissal of the claims—rather than a stay of proceedings—is appropriate. *See Grabbe v. Hall Am., Inc.*, No. 00-4100-RDR, 2000 WL 1701750, *3 (D. Kan. Oct. 23, 2000); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.3d 1161, 1165 (5th Cir. 1992); *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011); *but see, e.g., Braden v. Optum RX, Inc*, No. 21-cv-02046-TC-GEB, 2021 WL 5299402, *7 (D. Kan. Nov. 15, 2021) (finding a stay of proceedings preferable under the FAA). Accordingly, the Court should dismiss Bondy's claims pursuant to Fed. R. Civ. P. 12(b)(1) and (6). In the alternative, pursuant to 9 U.S.C. § 3, this matter should be stayed pending arbitration.

## CONCLUSION

For the reasons set forth above, Glass Lewis requests that the Court dismiss this action. In the alternative, Glass Lewis requests that this Court stay this action pending arbitration.

Respectfully submitted,

*/s/ Daniel B. Boatright*
Daniel B. Boatright
dboatright@littler.com
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO  64106
Telephone:    816.627.4400
Facsimile:    816.627.4444

Attorneys for Defendant

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of February, 2024, a copy of the foregoing was filed via the Court's CM/ECF system, which sent electronic notice to the following:

Kyle E. Murphy
Murphy, Kinney, & Sumy, LLC
406 W. 34th St., Suite 816
Kansas City, Missouri 64111
Phone:    (816) 281-5470
Fax:        (816) 866-7772
kyle@murphykinney.com

/s/ Daniel B. Boatright
Daniel B. Boatright