# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LAURA BONDY,

        Plaintiff,

    vs.

GLASS, LEWIS & CO., LLC,

        Defendant.

Case No.: 2:24-CV-02001-HLT-TJJ

## DECLARATION OF MARY BETH MACEDO

Pursuant to 28 U.S.C. § 1746, Mary Beth Macedo declares as follows:

1.     I am a citizen of the United States, over the age of 18, and competent to testify as to the matters contained in this Declaration.

2.     I have personal knowledge of the facts set forth in this Declaration.

3.     I have been employed by Glass, Lewis & Co., LLC as Vice President, Human Resources since May 5, 2014. In that position, I have a business reason to be familiar with personnel records, and I am a custodian of personnel records for Glass Lewis.

4.     On June 13, 2019, Glass Lewis e-mailed a signed offer letter to Laura Bondy offering her employment with Glass Lewis. The e-mail also included a Mutual Agreement to Arbitrate, which was referenced in the offer letter. A true and correct copy of the e-mail with the offer letter and Mutual Agreement to Arbitrate is attached as Exhibit A.

5.     By enclosing the Mutual Agreement to Arbitrate along with the signed offer letter, we communicated Glass Lewis' offer and intent to arbitrate pursuant to the terms of the Mutual Agreement to Arbitrate.

6.      On June 14, 2019, Ms. Bondy returned the signed offer letter and the signed Mutual Agreement to Arbitrate via e-mail. A true and correct copy of Ms. Bondy's e-mail with the signed offer letter and signed Mutual Agreement to Arbitrate is attached as Exhibit B.

7.      Upon receipt of the offer letter and Mutual Agreement to Arbitrate signed by Ms. Bondy, we placed both documents in her personnel file. Due to an oversight on my part, I forgot to sign the Mutual Agreement to Arbitrate before placing it in her file, but I understood that we had an agreement to arbitrate that was binding on both Ms. Bondy and Glass Lewis. The signed offer letter and Mutual Agreement to Arbitrate have been maintained in Ms. Bondy's personnel file since the date we placed them there in June 2019.

**PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed this 16th day of February 2024

_____
Mary Beth Macedo

# EXHIBIT A

**From:** Linda Harden
**Sent:** Thursday, June 13, 2019 4:05 PM
**To:** lmbondy2@gmail.com <lmbondy2@gmail.com>
**Subject:** Glass Lewis - Offer Letter

Hi Laura,

I have attached the offer letter and arbitration agreement for you to review.

Please return this document to me via email.  If you accept, you will receive an email from Pre-Employ to initiate your background check.

Let me know if you have any questions.

Kind Regards,

**Linda Harden, SHRM-CP, PHR**
HR Manager
Office +1 816- 533-3717

Glass Lewis & Co.
2323 Grand Blvd., Suite 1125
Kansas City, MO 64108

**GlassLewis.com** | **Blog** | **LinkedIn** | **Twitter**



June 13, 2019

<u>**VIA EMAIL**</u>
lmbondy2@gmail.com

Laua Bondy
2012 E 151st Ter
Olathe, KS 66062

Re: Offer Letter

Dear Laura,

I am pleased to offer you employment with Glass, Lewis & Co., LLC (the *"Company"*).  This letter sets forth the terms and conditions of your employment with the Company.  To be certain that you understand and agree with the terms of this employment offer, please review this letter, which you will need to sign and return prior to your start date as a condition of employment.  Once you have signed and dated this letter and the attached agreements where indicated, return them to Mary Beth Macedo, Vice President of Human Resources (the "VPHR") by no later than June 17, 2019.  This offer is conditioned upon your presenting evidence of your authorization to work in the United States and your identity for purposes of completing the Form I-9 as required by federal law. Please bring supporting documentation on your first day of employment. Your offer of employment is also contingent upon completion of the background check and Glass Lewis' receipt of satisfactory results of the check.

**Position:**  Your position will be Client Services Associate.

**Start Date:**  Your first day of employment will be a mutually agreed upon date.

**Compensation Package:** Your initial base salary for full-time work (in general 40 hours per week) will be $1,875.00 every semi-monthly pay period (equivalent to $45,000.00 on an annual basis) less applicable tax and other withholdings in accordance with the Company's normal payroll procedure. This position is a non-exempt position, which means you will be paid overtime in accordance with applicable state and federal law.

**Major Responsibilities:**  Your primary responsibilities will be those normally associated with the position of a Client Services Associate, as well as such other duties as your supervisor may from time to time assign to you.  The Company requires that you perform your assigned duties to the best of your ability and faithfully observe your obligations to the Company.  In addition, you will be expected to review and comply with the provisions of the Company's Employee Handbook. From time to time, the Company may impose additional or more specific work rules for you.

**At-Will Employment:**  Your employment with the Company is for no specified duration and is at the will of both you and the Company, which means that either you or the Company may end the employment relationship at any time for any or no reason, with or without advance notice.  In addition, the Company reserves the right to modify your compensation, position, duties or reporting relationship to meet business needs and to decide on appropriate discipline. The at-will nature of your employment may not be altered by any policy, practice, or representation of the Company, but only by a written agreement expressly modifying or waiving it, signed both by you and the VPHR.

**Reimbursements:**  You will be reimbursed on a regular basis for reasonable, necessary and properly documented business and travel expenses incurred for the purpose of conducting the Company's business, in accordance with Company's expense policy.

**Benefits:**  You will be eligible to participate in any employee benefit plans or programs maintained or established by the Company, including but not limited to PTO, group health benefits, and 401(k) plan, to the same extent as other employees at your level within the Company, subject to the generally applicable terms and conditions of the plan or program in question and the determination of any committee administering such plan or program.

**Company Standards:**  Your employment is conditioned upon your execution, return of and adherence to the Company's: (i) Code of Ethics; (ii) Employee Non-Disclosure, Assignment and Non-Solicitation Agreement; and (iii) Employee Handbook.

**Third Party Information:**  You agree that you will not, during your employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that you will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

**Arbitration:**  This offer of employment is also conditioned upon your agreement to enter, with the Company, the Mutual Agreement to Arbitrate provided with this letter.

**Severability:** If any provision of this letter agreement is determined by an arbitrator to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed and such finding shall not affect the validity of the remainder of this letter agreement.

**Entire Agreement/Modification:**  This letter agreement, including the Employee Non-Disclosure, Assignment and Non-Solicitation Agreement and the Mutual Agreement to Arbitrate, is the sole and entire agreement between you and the Company with respect to the subject of your employment and supersedes all prior or contemporaneous agreements or negotiations on that subject.  This agreement may not be modified except in a writing signed by the VPHR and you.

This letter agreement may be executed in two or more counterparts, which together will constitute the entire agreement.

Sincerely,

2

Mary Beth Macedo
Vice President of Human Resources


Enclosures

I have reviewed and understand the terms and conditions set forth in this letter and agree to them.


Dated: _____                    _____

3



# Mutual Agreement to Arbitrate

Employee: Laura Bondy ("you" or "your")

Glass Lewis & Company, LLC (the "Company")


1.      Mutual Agreement to Arbitrate. In the event of any dispute or claim relating to or arising out of your employment relationship with the Company (which, for purposes of this agreement to arbitrate includes any of Company's parent entities, subsidiaries, affiliates, legal successors, predecessors, assignees, investors as well as the owners, directors, officers, managers, members, shareholders, principals, employees and agents of same), your employment or the termination of your employment with the Company for any reason (including, but not limited to, any claims of breach of contract, defamation, unpaid wages, wrongful termination or age, sex, sexual orientation race, color, national origin, ancestry, marital status, religious creed, physical or mental disability or medical condition or other discrimination, retaliation or harassment), ***you and the Company agree*** that all such disputes shall be fully resolved by confidential, binding arbitration in Kansas City, Missouri, or such other location as the parties may mutually agree. However, claims for state unemployment insurance benefits, workers' compensation, and other claims that, by law, cannot be required to be resolved by binding arbitration are not covered, and thus are not subject to arbitration.  In addition, this agreement to arbitrate does not prevent you from filing charges with, or participating in investigations conducted by, government agencies with oversight over employment laws, including but not limited to the National Labor Relations Board, the Equal Employment Opportunity Commission and other local, state or federal government enforcement agencies.

2.      Arbitration Procedures. The arbitration will be administered by the American Arbitration Association ("AAA") under its Employment Arbitration Rules and Mediation Procedures (including the Optional Rules for Emergency Measures of Protection), except as otherwise provided in this Agreement.  These rules are available on the AAA's website located at: www.adr.org or upon request from the VPHR. Arbitration must be initiated by filing a written arbitration demand stating a description of the claim(s) and the remedy sought at any office of the AAA within the time limit established by the applicable substantive law's statute of limitations. If the Company files an arbitration claim, it will pay all arbitration fees and other forum costs charged by AAA.  If you file an arbitration claim, you are responsible for paying the arbitration filing fee; the Company will pay for all other arbitration forum costs charged by AAA.  However, if it is determined by AAA that it would be an undue hardship on you to pay the filing fee, then the Company will pay that amount. The arbitration will be conducted by a single, neutral arbitrator who will be mutually selected by the parties or, if the parties cannot agree, through a selection process overseen by AAA.

3.      Class or Collective Action Waiver. To the extent permitted by applicable law, you and the Company expressly intend and agree that the arbitrator has no authority to consolidate claims by different persons into one proceeding, nor shall the arbitrator have the power to hear an

1

arbitration as a class or collective action (a class or collective action includes an arbitration or lawsuit where representative members of a group who claim to share a common interest seek group, class or collective relief). **Accordingly, by entering into this mutual agreement to arbitrate you and the Company waive the right to: (a) assert or participate in class action or collective action procedures in any arbitration pursuant to agreement; (b) assert or seek class or collective remedies, damages, penalties or injunctive relief in any arbitration pursuant to this agreement; and agree that you and the Company shall only submit your or its own claims, which shall be heard on an individual basis without consolidation of any other person's or entity's claim(s), in any arbitration pursuant to this agreement**.

4.    Discovery. Discovery in the arbitration will presumptively be limited to three depositions, ten interrogatories and twenty document requests by or to each party. The arbitrator will have authority to order such further discovery as the arbitrator may consider necessary to a full and fair exploration of the issues in disputes, consistent with the expedited nature of arbitration.

5.    Remedies. The arbitrator is empowered to award all remedies otherwise available in a court of competent jurisdiction and any judgment rendered by the arbitrator may be entered by any court of competent jurisdiction. The arbitrator shall issue an award in writing and state the essential findings and conclusions on which the award is based.

6.    Waiver of Judge and Jury. By executing this agreement to arbitrate, you and the Company are both waiving the right to a trial before a judge or jury with respect to any such disputes.

7.    Application of FAA. You and the Company expressly agree that this agreement involves interstate commerce and the interpretation and enforcement of this agreement to arbitrate shall be governed by the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

8.    Delegation. You and the Company agree that disputes relating to the formation, applicability, interpretation and enforcement of this arbitration provision shall be determined exclusively by the arbitrator.

9.    Legal Counsel and Fees. Each party shall have the right to be represented by counsel of its choosing and will bear its own respective attorney fees, unless otherwise provided by law and awarded by the arbitrator.

10.    Survival. This agreement to arbitrate shall survive the termination of your employment.

11.    Counterparts. This letter agreement may be executed in two or more counterparts, which together will constitute the entire agreement.

12.    Severability: If any provision of this agreement is determined by an arbitrator to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed and such finding shall not affect the validity of the remainder of this agreement.

13.     <u>Entire Agreement/Modification:</u>  This agreement is the entire agreement between you and the Company with respect to the subject of arbitration of disputes and supersedes all prior or contemporaneous agreements or negotiations on that subject.  This agreement may not be modified except in a writing signed by the VPHR of the Company and you.

BY SIGNING BELOW, THE PARTIES FREELY AND VOLUNTARILY AGREE TO ENTER THIS MUTUAL AGREEMENT TO ARBITRATE.

Dated: _____

By:_____

Print name:_____

Dated: _____

By:_____

Mary Beth Macedo

Vice President, Human Resources

Glass Lewis & Company, LLC

3

# EXHIBIT B

**From:** Laura Bondy <lmbondy2@gmail.com>
**Sent:** Friday, June 14, 2019 7:32 AM
**To:** Linda Harden <lharden@glasslewis.com>
**Subject:** Re: Glass Lewis - Offer Letter

Hello Linda,

I am excited to accept this job offer and am looking forward to working with you and the team at Glass Lewis. Attached are the signed offer letter and arbitration agreement. I am available to start on July 1st as was discussed with Brendan. Please let me know if you need anything else or if there's any problem with the attachments, and feel free to contact me either by phone or email. Thanks so much for this opportunity and I look forward to my new position at Glass-Lewis.

Sincerely

Laura Bondy

On Thu, Jun 13, 2019 at 4:05 PM Linda Harden <lharden@glasslewis.com> wrote:
> Hi Laura,
>
> I have attached the offer letter and arbitration agreement for you to review.
>
> Please return this document to me via email.  If you accept, you will receive an email from Pre-Employ to initiate your background check.

Let me know if you have any questions.

Kind Regards,

**Linda Harden, SHRM-CP, PHR**
HR Manager
Office +1 816- 533-3717

Glass Lewis & Co.
2323 Grand Blvd., Suite 1125
Kansas City, MO 64108

**GlassLewis.com** | **Blog** | **LinkedIn** | **Twitter**

 **GLASS LEWIS**

June 13, 2019

**VIA EMAIL**
lmbondy2@gmail.com

Laua Bondy
2012 E 151st Ter
Olathe, KS 66062

Re: Offer Letter

Dear Laura,

I am pleased to offer you employment with Glass, Lewis & Co., LLC (the *"Company"*). This letter sets forth the terms and conditions of your employment with the Company. To be certain that you understand and agree with the terms of this employment offer, please review this letter, which you will need to sign and return prior to your start date as a condition of employment. Once you have signed and dated this letter and the attached agreements where indicated, return them to Mary Beth Macedo, Vice President of Human Resources (the "VPHR") by no later than June 17, 2019. This offer is conditioned upon your presenting evidence of your authorization to work in the United States and your identity for purposes of completing the Form I-9 as required by federal law. Please bring supporting documentation on your first day of employment. Your offer of employment is also contingent upon completion of the background check and Glass Lewis' receipt of satisfactory results of the check.

**Position:**  Your position will be Client Services Associate.

**Start Date:**  Your first day of employment will be a mutually agreed upon date.

**Compensation Package:** Your initial base salary for full-time work (in general 40 hours per week) will be $1,875.00 every semi-monthly pay period (equivalent to $45,000.00 on an annual basis) less applicable tax and other withholdings in accordance with the Company's normal payroll procedure. This position is a non-exempt position, which means you will be paid overtime in accordance with applicable state and federal law.

**Major Responsibilities:**  Your primary responsibilities will be those normally associated with the position of a Client Services Associate, as well as such other duties as your supervisor may from time to time assign to you. The Company requires that you perform your assigned duties to the best of your ability and faithfully observe your obligations to the Company. In addition, you will be expected to review and comply with the provisions of the Company's Employee Handbook. From time to time, the Company may impose additional or more specific work rules for you.

**At-Will Employment:** Your employment with the Company is for no specified duration and is at the will of both you and the Company, which means that either you or the Company may end the employment relationship at any time for any or no reason, with or without advance notice. In addition, the Company reserves the right to modify your compensation, position, duties or reporting relationship to meet business needs and to decide on appropriate discipline. The at-will nature of your employment may not be altered by any policy, practice, or representation of the Company, but only by a written agreement expressly modifying or waiving it, signed both by you and the VPHR.

**Reimbursements:** You will be reimbursed on a regular basis for reasonable, necessary and properly documented business and travel expenses incurred for the purpose of conducting the Company's business, in accordance with Company's expense policy.

**Benefits:** You will be eligible to participate in any employee benefit plans or programs maintained or established by the Company, including but not limited to PTO, group health benefits, and 401(k) plan, to the same extent as other employees at your level within the Company, subject to the generally applicable terms and conditions of the plan or program in question and the determination of any committee administering such plan or program.

**Company Standards:** Your employment is conditioned upon your execution, return of and adherence to the Company's: (i) Code of Ethics; (ii) Employee Non-Disclosure, Assignment and Non-Solicitation Agreement; and (iii) Employee Handbook.

**Third Party Information:** You agree that you will not, during your employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that you will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

**Arbitration:** This offer of employment is also conditioned upon your agreement to enter, with the Company, the Mutual Agreement to Arbitrate provided with this letter.

**Severability:** If any provision of this letter agreement is determined by an arbitrator to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed and such finding shall not affect the validity of the remainder of this letter agreement.

**Entire Agreement/Modification:** This letter agreement, including the Employee Non-Disclosure, Assignment and Non-Solicitation Agreement and the Mutual Agreement to Arbitrate, is the sole and entire agreement between you and the Company with respect to the subject of your employment and supersedes all prior or contemporaneous agreements or negotiations on that subject. This agreement may not be modified except in a writing signed by the VPHR and you.

This letter agreement may be executed in two or more counterparts, which together will constitute the entire agreement.

Sincerely,

2

Mary Beth Macedo
Vice President of Human Resources

Enclosures

I have reviewed and understand the terms and conditions set forth in this letter and agree to them.

Dated: 6/14/19

3

 GLASS LEWIS

## Mutual Agreement to Arbitrate

Employee: Laura Bondy ("you" or "your")

Glass Lewis & Company, LLC (the "Company")

1.    <u>Mutual Agreement to Arbitrate.</u> In the event of any dispute or claim relating to or arising out of your employment relationship with the Company (which, for purposes of this agreement to arbitrate includes any of Company's parent entities, subsidiaries, affiliates, legal successors, predecessors, assignees, investors as well as the owners, directors, officers, managers, members, shareholders, principals, employees and agents of same), your employment or the termination of your employment with the Company for any reason (including, but not limited to, any claims of breach of contract, defamation, unpaid wages, wrongful termination or age, sex, sexual orientation race, color, national origin, ancestry, marital status, religious creed, physical or mental disability or medical condition or other discrimination, retaliation or harassment), *you and the Company agree* that all such disputes shall be fully resolved by confidential, binding arbitration in Kansas City, Missouri, or such other location as the parties may mutually agree. However, claims for state unemployment insurance benefits, workers' compensation, and other claims that, by law, cannot be required to be resolved by binding arbitration are not covered, and thus are not subject to arbitration.  In addition, this agreement to arbitrate does not prevent you from filing charges with, or participating in investigations conducted by, government agencies with oversight over employment laws, including but not limited to the National Labor Relations Board, the Equal Employment Opportunity Commission and other local, state or federal government enforcement agencies.

2.    <u>Arbitration Procedures.</u> The arbitration will be administered by the American Arbitration Association ("AAA") under its Employment Arbitration Rules and Mediation Procedures (including the Optional Rules for Emergency Measures of Protection), except as otherwise provided in this Agreement.  These rules are available on the AAA's website located at: www.adr.org or upon request from the VPHR. Arbitration must be initiated by filing a written arbitration demand stating a description of the claim(s) and the remedy sought at any office of the AAA within the time limit established by the applicable substantive law's statute of limitations. If the Company files an arbitration claim, it will pay all arbitration fees and other forum costs charged by AAA.  If you file an arbitration claim, you are responsible for paying the arbitration filing fee; the Company will pay for all other arbitration forum costs charged by AAA.  However, if it is determined by AAA that it would be an undue hardship on you to pay the filing fee, then the Company will pay that amount. The arbitration will be conducted by a single, neutral arbitrator who will be mutually selected by the parties or, if the parties cannot agree, through a selection process overseen by AAA.

3.    <u>Class or Collective Action Waiver</u>. To the extent permitted by applicable law, you and the Company expressly intend and agree that the arbitrator has no authority to consolidate claims by different persons into one proceeding, nor shall the arbitrator have the power to hear an

1

arbitration as a class or collective action (a class or collective action includes an arbitration or lawsuit where representative members of a group who claim to share a common interest seek group, class or collective relief). **Accordingly, by entering into this mutual agreement to arbitrate you and the Company waive the right to: (a) assert or participate in class action or collective action procedures in any arbitration pursuant to agreement; (b) assert or seek class or collective remedies, damages, penalties or injunctive relief in any arbitration pursuant to this agreement; and agree that you and the Company shall only submit your or its own claims, which shall be heard on an individual basis without consolidation of any other person's or entity's claim(s), in any arbitration pursuant to this agreement.**

4.  Discovery. Discovery in the arbitration will presumptively be limited to three depositions, ten interrogatories and twenty document requests by or to each party. The arbitrator will have authority to order such further discovery as the arbitrator may consider necessary to a full and fair exploration of the issues in disputes, consistent with the expedited nature of arbitration.

5.  Remedies. The arbitrator is empowered to award all remedies otherwise available in a court of competent jurisdiction and any judgment rendered by the arbitrator may be entered by any court of competent jurisdiction. The arbitrator shall issue an award in writing and state the essential findings and conclusions on which the award is based.

6.  Waiver of Judge and Jury. By executing this agreement to arbitrate, you and the Company are both waiving the right to a trial before a judge or jury with respect to any such disputes.

7.  Application of FAA. You and the Company expressly agree that this agreement involves interstate commerce and the interpretation and enforcement of this agreement to arbitrate shall be governed by the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

8.  Delegation. You and the Company agree that disputes relating to the formation, applicability, interpretation and enforcement of this arbitration provision shall be determined exclusively by the arbitrator.

9.  Legal Counsel and Fees. Each party shall have the right to be represented by counsel of its choosing and will bear its own respective attorney fees, unless otherwise provided by law and awarded by the arbitrator.

10.  Survival. This agreement to arbitrate shall survive the termination of your employment.

11.  Counterparts. This letter agreement may be executed in two or more counterparts, which together will constitute the entire agreement.

12.  Severability: If any provision of this agreement is determined by an arbitrator to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed and such finding shall not affect the validity of the remainder of this agreement.

2

13.   Entire Agreement/Modification:  This agreement is the entire agreement between you and the Company with respect to the subject of arbitration of disputes and supersedes all prior or contemporaneous agreements or negotiations on that subject.  This agreement may not be modified except in a writing signed by the VPHR of the Company and you.

BY SIGNING BELOW, THE PARTIES FREELY AND VOLUNTARILY AGREE TO ENTER THIS MUTUAL AGREEMENT TO ARBITRATE.

Dated: 6/14/19

By: _____

Print name: Laura Bondy

Dated: _____

By: _____

Mary Beth Macedo

Vice President, Human Resources

Glass Lewis & Company, LLC

3