**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

LAURA BONDY,

      Plaintiff,

      v.

GLASS, LEWIS & CO., LLC,

      Defendant.

Case No. 2:24-cv-02001-HLT-TJJ

## <u>ORDER</u>

Plaintiff Laura Bondy alleges she suffered discrimination and a hostile work environment while she was employed with Defendant Glass, Lewis & Co. Defendant moves to dismiss or stay the case in favor of arbitration. Doc. 6. The parties agree Plaintiff and Defendant entered into an arbitration agreement that covers the claims in this case. But Plaintiff argues that she cannot be forced into arbitration because she is electing to proceed in court under the Ending Forced Arbitration Act ("EFAA"), 9 U.S.C. §§ 401-402. Doc. 10 at 1-2. The EFAA allows an individual asserting a sexual-harassment or sexual-assault claim to proceed with those claims in court even where an arbitration agreement would otherwise apply.

The Court finds that the EFAA applies where a plaintiff has plausibly stated a claim for sexual harassment or assault. Plaintiff has not done so here because she has not pleaded facts that would plausibly suggest she was subjected to a severe or pervasive hostile work environment based on sex. Accordingly, the Court grants Defendant's motion to the extent it seeks a stay of this case and compels arbitration.

## I.    BACKGROUND[1]

### A.    Substantive Allegations

Plaintiff is female. Doc. 1 at ¶ 12. She has 10 years of experience working in management. *Id.* ¶ 13. Plaintiff graduated in May 2019 with a Bachelor of Arts in Applied Organizational Leadership. *Id.* ¶ 15. She began working for Defendant in July 2019 as a Client Service Associate. *Id.* ¶¶ 16-17. A male coworker, Charlie Maybrier, also began that day in the same position. *Id.* ¶ 18. Maybrier had previously worked for Defendant in a temporary position. *Id.* ¶ 19.

Matt Seufert served in a Manager, Client Services position. *Id.* ¶ 14. Brendon McCarthy also worked in a Manager, Client Services position. *Id.* ¶ 20. Seufert led one team of employees, while McCarthy led another, though the teams operated as a whole. *Id.* ¶ 21. McCarthy did the onboarding process for both Plaintiff and Maybrier. *Id.* ¶ 20.

Throughout the pandemic, Plaintiff worked remotely from home. *Id.* ¶ 22. When she returned to work in the office, she only worked in the office one day a week and worked the rest of the week remotely. *Id.* ¶¶ 23-24.

Female employees reported McCarthy for discrimination. *Id.* ¶ 25. He once initiated an inappropriate conversation with a female employee about breastfeeding. *Id.* ¶ 26. He once told a female employee that another female employee would not be promoted but didn't say why. *Id.* ¶ 27. McCarthy once harshly criticized a female employee's lack of education and joked about it in front of others. *Id.* ¶ 28. McCarthy also "had a conversation with a co-worker about the attractiveness of his wife and how a co-worker wanted to have sexual relations with her." *Id.* ¶ 29. Plaintiff alleges on information and belief that McCarthy was intoxicated at work on one or more

---

[1]    The facts regarding Plaintiff's substantive allegations are taken from the complaint and are accepted as true for purposes of deciding Defendant's motion.

occasion. *Id.* ¶ 30. At some point, McCarthy was removed from assisting on accounts managed by female employees due to his inappropriate conduct. *Id.* ¶ 32. Plaintiff was not comfortable being alone with McCarthy. *Id.* ¶ 31.

In late 2021, Plaintiff was promoted to Senior Client Service Manager. *Id.* ¶ 33. Maybrier was promoted to a similar position around the same time. *Id.* ¶ 34. Plaintiff completed continuing education courses offered by Defendant and her performance was rated above expectations in 2021. *Id.* ¶¶ 35, 37. By early 2022, the workload of Plaintiff and other female workers was significantly larger than it was for male workers in similar positions. *Id.* ¶ 39.

Defendant promoted Maybrier in July 2022 to a supervisory position. *Id.* ¶ 40. Plaintiff alleges on information and belief that Maybrier was given the supervisory position without being interviewed. *Id.* ¶ 48. Seufert later told Plaintiff she had been considered for that position. *Id.* ¶ 44. But she had not been encouraged to apply or made aware the job was available. *Id.* ¶ 45. Plaintiff is not even aware that the job was ever posted, and she believes it was newly created. *Id.* ¶¶ 46-47. Seufert indicated Plaintiff needed to do more work for the same pay, but he was glad she was interested in a supervisory position. *Id.* ¶ 49.

Plaintiff had a remote meeting with Seufert on September 1, 2022. *Id.* ¶ 50. She told him she had received another job offer with higher pay. *Id.* ¶ 52. Plaintiff said she expected to be promoted if she stayed employed with Defendant. *Id.* ¶ 53. Seufert said Defendant was willing to match the compensation of the other job offer. *Id.* ¶ 54.

The same month Seufert told Plaintiff about a training committee he wanted her to be a part of because she was great at creating policies and procedures. *Id.* ¶¶ 55-56. Plaintiff said she was interested and Seufert was glad to hear it because it was a "voluntold" opportunity, meaning she was expected to join the committee for no additional pay. *Id.* ¶¶ 57-58.

Defendant had not increased Plaintiff's pay or promoted her by late September 2022. *Id.* ¶ 59. Seufert told Plaintiff that her promotion was in the budget for the next year. *Id.* ¶ 60. Plaintiff received less pay than male co-workers in similar positions. *Id.* ¶ 61.

On September 29, 2022, Plaintiff resigned. *Id.* ¶ 64. Another female employee resigned around the same time, and several of the clients previously assigned to Plaintiff and the other female employee were reassigned to a male co-worker. *Id.* ¶¶ 67-68. Plaintiff cited in her exit interview actions Defendant could have taken to prevent her from leaving, namely providing higher pay and pay transparency, opportunities for advancement, and chances for cross-training and skill development, and by addressing the unsustainable workload. *Id.* ¶ 65.

Plaintiff filed a Charge of Discrimination with the EEOC on November 15, 2022. *Id.* ¶ 8. The EEOC complaint states that Plaintiff "was treated differently in the terms and conditions of [her] employment, not promoted and constructively discharged . . . because of my Sex, Female." Doc. 1-1 at 1.[2] It alleges Plaintiff was given a heavier workload than Maybrier, that she was not given the same chance at a promotion as Maybrier, that she was expected to be on the training committee without additional pay, and that she asked for more pay in September 2022. *Id.* The Charge of Discrimination does not make any allegations about (or mention) McCarthy, nor is there any claim of harassment or a hostile work environment. *See id.* Plaintiff subsequently received a Notice of Right to Sue. Doc. 1 at ¶ 9. Plaintiff then filed this lawsuit asserting one collective count under Title VII for discrimination and hostile work environment. *Id.* ¶¶ 70-80. The complaint also references constructive discharge. *Id.* ¶¶ 62-64.

---

[2]   Plaintiff references in and attaches to the complaint her Charge of Discrimination and right-to-sue letter. *See* Doc. 1 at ¶¶ 8-9; Doc. 1-1; Doc. 1-2. Those documents are therefore properly considered. *See Lincoln v. Maketa*, 880 F.3d 533, 537 n.1 (10th Cir. 2018) (noting that conversion of a motion to dismiss to a summary-judgment motion is not necessary where "documents are referenced in the complaint and their authenticity is unchallenged").

### B.    Arbitration Agreement

At the start of Plaintiff's employment, Defendant's HR Manager emailed Plaintiff an offer letter and arbitration agreement. Doc. 7-1 at 5. The offer letter said that the "offer of employment is also conditioned upon your agreement to enter, with the Company, the Mutual Agreement to Arbitrate provided with this letter." *Id.* at 8. The "Mutual Agreement to Arbitrate" ("Arbitration Agreement") states:

> In the event of any dispute or claim relating to or arising out of your employment relationship with the Company . . . , your employment or the termination of your employment with the Company for any reason (including, but not limited to, any claims of breach of contract, defamation, unpaid wages, wrongful termination or age, sex, sexual orientation[,] race, color, national origin, ancestry, marital status, religious creed, physical or mental disability or medical condition or other discrimination, retaliation or harassment), ***you and the Company agree*** that all such disputes shall be fully resolved by confidential, binding arbitration in Kansas City, Missouri, or such other location as the parties may mutually agree.

*Id.* at 10 (emphasis in original). The Arbitration Agreement also includes a delegation provision: "You and the Company agree that disputes relating to the formation, applicability, interpretation and enforcement of this arbitration provision shall be determined exclusively by the arbitrator." *Id.* at 11.

## II.    ANALYSIS

### A.    The Arbitration Agreement covers the claims in this case unless the EFAA applies.

Defendant moves to dismiss or stay the case in favor of arbitration. Doc. 6. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, broadly applies to written arbitration agreements "evidencing a transaction involving commerce." *Id.* § 2. The FAA evinces "a liberal federal policy favoring arbitration agreements," and questions of arbitrability must be resolved with this policy

in mind. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Arbitration is a contractual matter. *Palomo v. GMRG ACQ1, LLC*, 631 F. Supp. 3d 1003, 1006 (D. Kan. 2022). Courts initially determine whether a valid arbitration agreement exists. *Id.* The burden is on the party seeking to compel arbitration. *Id.* The court then determines whether a dispute falls within an arbitration agreement. *Id.*

Defendant points to the Arbitration Agreement in which Plaintiff agreed to arbitrate claims like those she brings here. Defendant cites evidence of offer, acceptance, and consideration, and identifies provisions in the Arbitration Agreement that cover the claims in this case. Doc. 7 at 5-8. Notably, Plaintiff does not dispute that she signed the Arbitration Agreement. Doc. 10 at 6. And she seemingly agrees the asserted claims are covered by it, or at least makes no arguments to the contrary.

However, Plaintiff has invoked the EFAA and argues it allows her to forego arbitration and proceed with her claims in court notwithstanding the Arbitration Agreement. *Id.* The EFAA— formally titled the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021—is found at 9 U.S.C. §§ 401-402 and amends the FAA. The EFAA states:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute . . . , no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to . . . the sexual harassment dispute.[3]

9 U.S.C. § 402(a). A "'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.*

---

[3]  The statute also applies to sexual-assault allegations. 9 U.S.C. § 402(a). Additionally, "[t]he EFAA applies only to claims that accrued on or after March 3, 2022." *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 550 (S.D.N.Y. 2023). Defendant does not argue Plaintiff's claims accrued before that date, and the Court will therefore assume without deciding that the EFAA at least temporally applies here.

§ 401(4). Courts determine whether the EFAA applies in accordance with federal law even where a delegation clause exists. *Id.* § 402(b).

Accordingly, because the parties agree there is an applicable agreement to arbitrate, the Court must compel arbitration in this case unless it determines that the EFAA applies.

### B.      A plausible sexual-harassment claim is required to invoke the EFAA.

Plaintiff argues that the EFAA applies because she filed a lawsuit that accuses Defendant of violating Title VII by discriminating against, harassing, and subjecting her to a hostile work environment. She argues that she is not required to plead or state a claim for sexual harassment for the EFAA to apply so long as she filed a case that relates to sexual harassment. But even she acknowledges that the caselaw is against her on this point. *See* Doc. 10 at 7 ("To be sure, two courts have found that the EFAA applies only where the plaintiff's sexual harassment claim can survive a motion to dismiss.").

In *Yost v. Everyrealm, Inc.*, the Southern District of New York construed "the EFAA to require that, where a party seeks to invoke the EFAA based on a claim of sexual harassment, such a claim must have been plausibly pled." 657 F. Supp. 3d at 567. *Yost* based this conclusion on the fact that reading § 402(a) together with the definition in § 401(4) "adds a legal dimension to the required allegation." *Id.* at 585. Specifically, the qualifying language in § 401(4) defines "sexual harassment dispute" with reference to the substantive law and "makes the EFAA inapplicable where there has not been an allegation that such conduct violated a law prohibiting sexual harassment." *Id.* And because the EFAA "expressly referred to allegations of violations of law, it is reasonable to infer that Congress in 2022 was aware that only viably pled (that is, plausible) allegations of sexual harassment law had the capacity to proceed past the pleading stage in federal

7

court." *Id.* Therefore, *Yost* concluded the applicability of the EFAA turns on the existence of a claim that can survive a Rule 12(b)(6) motion to dismiss. *See id.*[4]

*Yost* found that to hold otherwise would allow the "EFAA tacitly to void arbitration agreements after the point at which plaintiffs have proven themselves unable to plead claims of sexual harassment consistent with *Iqbal*" and "could destabilize the FAA's statutory scheme." *Id.* at 586. It would also "invite mischief, by incenting future litigants bound by arbitration agreements to append bogus, implausible claims of sexual harassment to their viable claims, in the hope of end-running these agreements." *Id.* at 588.

The Court finds this analysis and reasoning persuasive and agrees that the applicability of the EFAA in this case turns on whether Plaintiff has <u>plausibly</u> pleaded a claim for sexual harassment.[5]

### C.      Plaintiff has not plausibly stated a sexual-harassment claim.

The plausibility standard is largely based on *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A claim is plausible if it is accompanied by sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* In evaluating plausibility, courts look to the well-pleaded

---

[4]   *Yost* suggested that the "relating to" language in the EFAA could be read to extend the EFAA to claims of retaliation for opposing sexual harassment. 657 F. Supp. 3d at 583 n.14 (S.D.N.Y. 2023). Retaliation is not alleged here, and the Court does not determine whether a retaliation claim based on opposition to sexual harassment invokes the EFAA. Another court determined that the EFAA renders an arbitration provision unenforceable only to the extent the case filed by the plaintiff "relates to" the sexual harassment dispute, such that unrelated claims alleged in the same complaint (e.g., wage and hour claims) are still subject to arbitration. *Mera v. SA Hosp. Grp., LLC*, 675 F. Supp. 3d 442, 447-48 (S.D.N.Y. 2023). As with retaliation, this is not an issue that needs to be decided here.

[5]   Plaintiff argues that the EFAA does not authorize courts to determine the merits of a sexual-harassment claim. Doc. 10 at 8. But determining whether a claim is plausibly alleged such that it would survive a motion to dismiss is not the same as determining the merits of a claim.

factual allegations in a complaint but do not consider legal conclusions or conclusory statements. *Id.* at 678-79.

Plaintiff alleges a hostile work environment based on sex, which is a form of sexual harassment. Doc. 1 at ¶¶ 70-80; *see also Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987) (noting that a hostile work environment based on sex is a form of sexual harassment). A plaintiff pleads a plausible hostile-work-environment claim by pleading "facts sufficient to show that the work environment is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Brown v. LaFerry's LP Gas Co., Inc.*, 708 F. App'x 518, 520 (10th Cir. 2017) (internal quotation and citation omitted). There must be facts pleaded showing that the work environment is both subjectively and objectively hostile. *Id.* A few isolated acts are not sufficient, nor is simply boorish, juvenile, or annoying behavior. *See Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021). Courts consider the totality of the circumstances. *Id.*

Considering the totality of the circumstances, and construing all inferences in Plaintiff's favor, the Court finds Plaintiff has not plausibly stated a claim for a sexually based hostile work environment. First, Plaintiff points to the statements made "throughout her employment" by McCarthy. Doc. 10 at 10. Plaintiff alleges in her complaint that McCarthy:

- had an inappropriate conversation with a female employee about breastfeeding;

- told a female employee that another female employee was not going to be promoted but didn't say why;

- expressed harsh criticism to a female employee about her lack of education and made jokes about it in front of others; and

- "had a conversation with a co-worker about the attractiveness of his wife and how a co-worder wanted to have sexual relations with her."

Doc. 1 at ¶¶ 26-29. Plaintiff did not feel comfortable being alone around McCarthy,[6] and Defendant removed McCarthy from working on accounts held by female employees. *Id.* ¶¶ 31-32. There are no dates pleaded suggesting when these comments were made, nor are any of them alleged to have been made to Plaintiff or within Plaintiff's hearing. Plaintiff also alleges that female workers had a larger workload than male workers. *Id.* ¶ 39. Maybrier was promoted to a job that Plaintiff was not aware of and was not interviewed for, *id.* ¶ 45, and she was paid less than similarly situated male coworkers, *id.* ¶ 61. Plaintiff was told to join a committee with no additional pay. *Id.* ¶ 58. Finally, on September 1, 2022, Seufert told Plaintiff that Defendant would match the compensation of a job offer she received, *id.* ¶¶ 50, 54, but by the end of the month Defendant had not raised Plaintiff's pay and Seufert said her promotion was in the budget for the following year, *id.* ¶¶ 59-60.

These facts do not allege a severe or a pervasive hostile work environment based on sex. As for severe harassment, nothing in the complaint suggests any conduct that would rise to that level, which generally involves tortious conduct or physical contact. *See Frank v. Heartland Rehab. Hosp., LLC*, 2022 WL 486793, at *3 (D. Kan. 2022).

As for pervasive harassment, Plaintiff alleges McCarthy made a few inappropriate remarks, and at this stage the Court will presume those allegations to be true. But there are no allegations any of the comments were made to Plaintiff, nor is there any indication as to when they were made during the course of Plaintiff's three-year employment with Defendant or when Plaintiff became

---

[6] It is unclear how often Plaintiff would have been alone with McCarthy. She specifically pleads that she primarily worked from home during the pandemic, and when she did return to the office, it was only one day a week. Doc. 1 at ¶¶ 22-23. Remote work doesn't foreclose a claim of harassment, but it is a factor in judging the pervasiveness of any such harassment.

aware of them.[7] Further, even if Plaintiff was aware of and found these remarks to be subjectively offensive, none of the comments are of the type that would plausibly sustain a finding of an objectively hostile work environment claim. Annoying or even boorish statements such as those alleged are generally not sufficient, especially when it is just a few isolated remarks. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997) (finding no hostile work environment where the plaintiff alleged four inappropriate comments and an incident where a supervisor put his arm around her and looked down her dress); *Frank*, 2022 WL 486793, at *3 (finding no pervasive harassment where the defendant "made four inappropriate comments, complimented [the plaintiff's] shirt five to seven times while looking her up and down, and frequently looked at [the plaintiff] and told her how nice she looked over a four-month period"); *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 551-52 (8th Cir. 2007) (finding no severe or pervasive harassment where coworkers frequently commented on the plaintiff's body and requested dates, and one touched her bangs and wiped water off her pants); *Singleton v. Dep't of Corr. Educ.*, 115 F. App'x 119, 120, 122-23 (4th Cir. 2004) (finding no actionable harassment when the plaintiff complained that her coworker, among other things, "insistently complimented" her, stared at her breasts when he spoke to her, and "constantly" told her how attractive he found her); *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 87-88, 97-99 (D.D.C. 2007) (finding no severe or pervasive harassment when supervisor hugged the plaintiff and touched her buttocks, tried to kiss her, commented on her appearance, asked her to accompany him on a weekend trip, and stared at her often). Even considering Plaintiff's complaint that a male coworker was promoted to a job she was not aware of, that female workers had higher workloads and less pay, and that

---

7   Plaintiff argues that the continuing violation doctrine applies and that her claim accrued after the enactment of the EFAA. Doc. 10 at 12-13. Defendant does not argue otherwise. *See supra* note 3. However, the timing of any allegedly harassing conduct is still relevant to whether a plaintiff has stated a pervasively hostile work environment.

Defendant asked Plaintiff to do more work for the same pay, the facts do not plausibly allege objectively pervasive harassment based on sex.[8]

### III.    CONCLUSION

In sum, the Court finds Plaintiff has not plausibly asserted a claim for sexual harassment.[9] Absent a plausible claim for sexual harassment, Plaintiff may not invoke the EFAA to avoid the Arbitration Agreement, which she agrees is otherwise enforceable. *See* Doc. 10 at 6. Based on this, the Court finds this dispute must proceed to arbitration.[10]

Defendant suggests that some courts have dismissed cases subject to arbitration instead of staying the case. *See* Doc. 7 at 9. But the Court finds that a stay is the proper course. *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue

---

[8]    In its reply brief, Defendant notes that Plaintiff never exhausted a sexual-harassment claim. Doc. 12 at 2. Defendant points out that claims in court are limited to those raised and exhausted administratively. *See id.* Plaintiff's EEOC complaint does not make any allegations of sexual harassment, nor does it mention McCarthy. *See* Doc. 1-1. The Court agrees that Plaintiff's failure to exhaust a sexual-harassment claim is noteworthy for two reasons. First, it demonstrates that Plaintiff's employment dispute does not, in reality, relate to sexual harassment. Given that Plaintiff never pursued such a claim administratively, the Court questions whether the inclusion of such a claim in the complaint is the type of "mischief" warned against by *Yost*, and done solely for the purpose of avoiding arbitration. *See* 657 F. Supp. 3d at 588. Second, a plaintiff generally must exhaust any Title VII claim administratively as a prerequisite for bringing that claim in court. *Sanderson v. Wy. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020). An unexhausted claim for sexual harassment would be subject to dismissal and would leave the applicability of the EFAA in doubt. Failure to exhaust is an affirmative defense, however. *See Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). Defendant has not moved to dismiss any claim for failure to exhaust. Thus, the Court does not rely on Plaintiff's failure to exhaust a sexual-harassment claim in deciding that the EFAA is inapplicable. Rather, it notes this issue to underscore the rather tenuous connection Plaintiff's employment dispute has to a sexual-harassment dispute.

[9]    This is not to say that Plaintiff has not plausibly stated a claim for discrete discrimination. That issue is not before the Court, and the Court does not consider it. Discrete discrimination and hostile work environment are distinct claims under Title VII. *See Pfannenstiel v. Kansas*, 2022 WL 873674, at *10 (D. Kan. 2022). The existence of factual allegations supporting the former doesn't necessarily mean a plaintiff has plausibly alleged the latter. Further, the EFAA cannot be invoked based on a sex-discrimination claim. Rather, it requires a claim of sexual harassment or assault. *See* 9 U.S.C. § 402(a).

[10]    The Court has determined Plaintiff has not stated a plausible sexual-harassment claim sufficient to invoke the EFAA. But there is currently no pending motion to dismiss any claims under Rule 12(b)(6), and thus no grounds for the Court to formally dismiss any claim. Additionally, the Arbitration Agreement contains a delegation clause in which the parties agreed that "disputes relating to the formation, applicability, interpretation and enforcement of this arbitration provision shall be determined exclusively by the arbitrator." Doc. 7-1 at 11. Although it is up to the Court to decide whether the EFAA applies, *see* 9 U.S.C. § 402(b), the Court will otherwise leave it to the arbitrator to decide the scope of the arbitration, including what claims are at issue.

referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."); *see also Palomo*, 631 F. Supp. 3d at 1009 ("The Court also exercises its discretion and stays this case rather than dismissing it because a stay is the preferred method of managing a case that is in arbitration.").

THE COURT THEREFORE ORDERS that Defendant's Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration (Doc. 6) is GRANTED IN PART AND DENIED IN PART. The Court grants the motion to the extent it seeks a stay of this action pending arbitration and denies it to the extent it seeks dismissal.

THE COURT FURTHER ORDERS that this case is STAYED while the parties arbitrate their claims. The parties shall file a status report by October 18, 2024, or within 7 days of the arbitration concluding, whichever is earlier.

IT IS SO ORDERED.

Dated: April 18, 2024            /s/ *Holly L. Teeter*
                                 HOLLY L. TEETER
                                 UNITED STATES DISTRICT JUDGE

13